IN THE OREGON TAX COURT

## SPRINGFIELD CHURCH OF THE BRETHREN
*v.*
## DEPARTMENT OF REVENUE
(TC 2482)

Richard L. Gassman, Eugene, represented plaintiff.

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered May 6, 1987.

### CARL N. BYERS, Judge.

Plaintiff seeks a determination that certain of its real

property is exempt from ad valorem tax as of the assessment dates of January 1, 1984, and January 1, 1985. Defendant denied the exemption on the grounds that the use of the property does not qualify under ORS 307.130.

Plaintiff is a small church located in Springfield, Oregon. It purchased the subject property in October 1982. Previously operated as an old motel, the property contains six separate buildings; an L-shaped building containing twelve units, a triplex, two houses, a garage and a building which was subsequently converted by plaintiff to a house of worship. The latter building is not in issue here.

The improvements were somewhat run down at the time of purchase by plaintiff. Plaintiff purchased the property with the intent to provide shelter for the homeless and destitute. Mr. Hal Sheller, Pastor, testified that initially plaintiff's objectives were vague. Plaintiff recognized that the economics of a small church required it to continue operating part of the property as a motel in order to meet the mortgage payments. Consequently, the property continued to be operated as a motel until March of 1983. At that time plaintiff formed a separate nonprofit corporation entitled Brethren Community Services (BCS). Mr. Sheller testified that one reason for having a separate corporation was the need to obtain government grants and assistance. He indicated the government is reluctant to deal with religious organizations. Mr. Sheller emphasized that BCS was not just an extension of plaintiff but a separate corporation. He noted that three of the original directors were not members of the church.

Although BCS assumed operation of the property in March 1983, it appears to have operated the property as an agent for plaintiff until June 1, 1984, when BCS entered into a written lease agreement with plaintiff. (Exhibit 3.) During that period BCS began the transition from operating the property as a commercial rental to subsidized arrangements for the needy. Mr. Sheller indicated that during that time some units were subsidized and some were not. A major remodeling of the L-shaped building began in May of 1984. Remodeling was accomplished by $4,978 in gifts (donations), $2,500 in loans, $4,144 in government grants and $5,925 of fire insurance proceeds received by plaintiff from a fire in one of the units in the

building.[1] There was also substantial donated labor utilized in the remodeling which plaintiff has valued at $20,680.

After commencing operation of the property, BCS became aware that such a project required more staff than it could provide. A full-time staff was required to look after the needs of the mentally ill, the abused and others who were given assistance. As a result, on September 1, 1985, BCS entered into an agreement with Eugene Emergency Housing (EEH) to operate the property. (Exhibit 11.) The agreement indicates that the parties intended "a cooperative venture" between BCS and EEH. EEH is an older, more established charitable organization with a paid staff able to provide the necessary social services (such as counseling to the chronically ill tenants). Mr. Sheller stated that after EEH took over BCS has played only a very minor role. In fact, EEH pays the lease payments directly to plaintiff even though BCS remains the lessee of record. As operated by EEH, thirteen of the fifteen units are used to house abused or homeless families or those who are chronically ill. Two of the units are used for housing of staff on premises.

Plaintiff seeks exemption under ORS 307.130. The relevant portions of that statute provide:

> "Upon compliance with ORS 307.162, the following property owned or being purchased by incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

> "(1) Except as provided in ORS 748.545, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."

Due to the changes in relationships and uses of the property from January 1, 1984, to January 1, 1985, the court will separately determine the status of the property for each year.

---

[1] The character of the payment of the insurance proceeds is not clear. Although the lease between BCS and plaintiff requires plaintiff to repair the property and therefore might obligate plaintiff to pay the insurance proceeds to BCS, if the proceeds were paid prior to entering into the lease, they might be viewed as a contribution to BCS.

*January 1, 1984*

Although BCS operated the property from March 1983 to June 1984, it did so not as a lessee but as an agent for plaintiff. Consequently, the issue is whether the property was used "exclusively" for the charitable or benevolent work of plaintiff. The evidence indicated that the remodeling did not start until May 1984. According to plaintiff, during the period 1983-84, plaintiff received $10,633 of rent out of a total income of $10,949. Only $231 was received as individual donations. Plaintiff also claims "credit" for labor donated during that period. Mr. Sheller, and perhaps others paid by plaintiff, donated a portion of their time which plaintiff values at $3,175. In addition, other individuals donated labor which plaintiff values at $123. Despite the use of donated labor, from the evidence presented it appears that the property was not used for charitable purposes.

It appears to the court that as of January 1, 1984, plaintiff had not sufficiently converted the property from a commercial operation to charitable use. Consequently, the property does not qualify for exemption under ORS 307.130 as of January 1, 1984.

*January 1, 1987*

As noted above, BCS leased the property from plaintiff effective June 1, 1984. Where property is owned by one charitable organization and is leased to another charitable organization, it may be exempt upon compliance with ORS 307.166. Subsection (1) of that statute provides:

"(1) If property is owned or being purchased by an institution, organization or public body, and if the institution, organization or public body is one granted exemption or the right to claim exemption for any of its property under a provision of law contained in this chapter, and such institution, organization or public body leases or otherwise grants the use and possession of such property to another institution, organization or public body likewise granted exemption or the right to claim exemption for any of its property under a provision of law contained in this chapter, such property is exempt from taxation if used by the lessee or possessor in the manner, if any, required by law for exemption of property owned or being purchased by it and the rent charged does not exceed the cost of repairs, maintenance, amortization and upkeep. Likewise,

if the lessee or grantee of the use and possession in turn subleases or otherwise grants the use and possession of the property to a third institution, organization or public body of the kind described in this subsection, such property is exempt if the use and rent meet the conditions required by this subsection for lessees and grantees."

■ Ordinarily, under this statute the court would be required to determine whether evidence established that the rent charged did not exceed cost of "repairs, maintenance, amortization and upkeep." However, in this instance, the court need not proceed to that point. Subsection (2) of the statute requires the "lessee or entity in possession" to file the claim for exemption with the county assessor. BCS did not file a claim with the assessor. Although plaintiff submitted no evidence on this point, it appears from the defendant's opinion and order that plaintiff filed the application for exemption. Further, subsection (3) of the statute indicates that "[i]f either the ownership or use changes, a new application shall be filed." Since the statute looks to either the lessee or "entity in possession," it appears that EEH should have also filed an application for exemption when it took over operation of the property. Regardless of whether BCS or EEH or both should have filed, neither did.

■ Although neither party raised any issue with regard to ORS 307.166, probably through oversight, the court cannot overlook the requirements of that statute. Exemption statutes are to be strictly construed in order to avoid granting benefits beyond those intended by the legislature. When ORS 307.130 is strictly construed, the exempt organization owning the property must be the same organization which makes use of the property. *Albany Gen. Hospital v. Dept. of Rev.*, 277 Or 727, 561 P2d 1029 (1977). Therefore, a lessee who would seek to have property exempted because of the lessee's use must comply with the requirements of ORS 307.166.

Judgment will be entered sustaining the defendant's opinion and order. Costs to neither party.